IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| VMEDEX, INC., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 18-1662-MN |
| | ) | |
| TDS OPERATING, INC., *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM**

The Court entered an Order assigning me to serve as a special master to hear and decide discovery disputes in this litigation.  (D.I. 102).  Before me is a motion to compel filed by plaintiffs (together, "vMedex") on October 28, 2021.  (D.I. 115).  Defendants (together, "TDS Operating") oppose.  Each side filed a letter brief outlining their positions.  I have reviewed the parties' papers, and I conducted a hearing on November 8, 2021.  This memorandum sets forth the reasons for my decision on the motion.

<u>Issue No. 1 – Data underlying the "EUGA Spreadsheet"</u>

Defendants produced a spreadsheet, TDS_896, which I will call the "EUGA spreadsheet."  "EUGA" stands for Executive Unit Grant Agreement; plaintiffs Nixon and Grosso each entered into an Executive Unit Grant Agreement with defendant RX-30 Holdings, LLC.  (*See* TDS Letter, Exh. A).

Defendants explained in their letter and at the hearing that the EUGA spreadsheet shows the ownership unit payouts that plaintiffs Nixon and Grosso allegedly would have received had they not been terminated.  One of defendants' employees created the spreadsheet for this litigation.  The spreadsheet details two sets of calculations—one for Class C units and one for Class D units.  The calculations use values derived from documents that are not in the record and that was not produced by defendants.  Defendants' letter notes that it objected to several discovery requests that covered these documents.

Plaintiffs characterize the EUGA spreadsheet as a "summary of fairly complicated calculations described" in the EUGAs (vMedex Letter at 1), and seek an order requiring defendants to produce "all source documents used to create [the EUGA spreadsheet] as required under Rule 1006."  (D.I. 115, Proposed Order ¶3).  Rule 1006, titled "Summary to Prove Content," states:

> The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place.  And the court may order the proponent to produce them in court.

Defendants contest that the EUGA spreadsheet falls within the scope of Rule 1006 and suggests the spreadsheet instead may be a business record admissible under Federal Rule of Evidence 803(6).  Defendants also assert that the issue posed

2

by plaintiffs' motion only becomes ripe if defendants choose to use the spreadsheet at trial.  Plaintiffs, however, stated at the hearing that they may elect to use the spreadsheet at trial as well; this seems plausible.  Defendants finally argue that, if Judge Noreika finds that the spreadsheet falls within Rule 1006 at or near trial, Judge Noreika could then order production of the underlying data.

Questions about whether the spreadsheet is a Rule 1006 document admissible at trial is a question outside the scope of the order referring discovery disputes to me, as are the procedures to be used at trial if the spreadsheet is subject to Rule 1006.  Neither party has pointed me to a case discussing whether the materials underlying a purported Rule 1006 document must be produced during the fact discovery period.  Generally, the data and materials underlying a document admissible under Rule 1006 must be admissible at trial.  *Eichorn v. AT&T Corp.*, 484 F.3d 644, 650 (3d Cir. 2007), and nothing in Rule 1006 shields underlying data and materials from discovery.

With this in mind I turn to Federal Rules of Civil Procedure 1 and 26 for guidance.  Rule 26(b)(1) outlines the scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information

> within this scope of discovery need not be admissible in
> evidence to be discoverable.

Here, both parties view the EUGA spreadsheet as relevant to the issues in the

litigation.  I find that the data and documents forming the basis of the calculations

summarized in the spreadsheet are also relevant; these materials are needed to

calculate any recovery for breach of the EUGAs.  Defendants assert these materials

are not relevant on the basis of their objections to requests for production that also

sought this data, but the objections do not make that claim.  (*See* TDS Letter, Exh.

B at 10-11 (responses to requests 20-24)).  Instead, defendants agreed to produce:

> documents sufficient to show the amount(s), if any, Joseph
> Grosso and Robert Nixon would have received had they not
> forfeit[ed] their shares under the EUGA.

It is hard to see how the data and documents used to calculate the values found in

various cells of the EUGA spreadsheet are not needed to show the amount Messrs.

Grosso and Nixon would have received under the EUGA.

Defendants do not make arguments about the other factors outlined in Rule

26(b)(1).  Some of these factors weigh clearly in favor of production, including the

parties' relative access to the information and the likely central nature of the

information to any damages claim.

Rule 1, which directs that the Federal Rules of Civil Procedure be

administered and employed to secure the just, speedy, and inexpensive

determination of this litigation, also counsels in favor of ordering production of the

4

materials underlying the EUGA spreadsheet during fact discovery.  Waiting to address production of the underlying data until Judge Noreika makes a determination that the EUGA spreadsheet falls within the scope of Rule 1006 is unworkable and unreasonable.  In timed trials within the District of Delaware, jurors are often given a commitment by the Court about the length of their service. Even assuming any ordered production of materials is made immediately, it is unlikely that plaintiffs could review, understand, and effectively use such a production without a severe disruption of the trial and the Court's time estimates to the jury.

I therefore find the requested materials to be relevant and that these materials should be produced now.

Issue No. 2 – Witnesses

Plaintiffs' also seek an order "compelling defendants to produce . . . certain witnesses for deposition."  (D.I. 115).  The witnesses are Steve Wubker, John Kos, and Maria Sonksen.

Defendants assert that this motion is outside the referral order because it is, in effect, a motion to extend the discovery period.  While aspects of plaintiffs' letter brief suggest that they are seeking leave to serve subpoenas on these witnesses, plaintiffs' motion states that they are seeking an order "compelling defendants to produce . . . certain witnesses for deposition."  (D.I. 115).  I take

plaintiffs at their word, *e.g.*, that they are seeking an order compelling defendants

to produce these witnesses.

Facts common to the three individuals at issue are as follows.  On August 9,

2021, defendant TDS Operating Inc. ("TDS Operating") identified Mr. Wubker

and Ms. Sonksen as individuals likely to have discoverable information that TDS

Operating may use to support its claims or defenses under Federal Rule of Civil

Procedure 26(a)(1).  Plaintiffs assert that TDS Operating also listed Mr. Kos in its

Rule 26(a)(1) disclosures but the materials submitted with this motion do not

support that claim.  (TDS Letter, Exhs. G & H).  TDS Operating's Rule 26(a)(1)

disclosure identified Mr. Wubker and Ms. Sonksen as former employees of

Transaction Data Systems, Inc.  The Court has dismissed the claims against

Transaction Data Systems, Inc.  Plaintiffs noticed the depositions of Mr. Wubker,

Mr. Kos, and Ms. Sonksen on October 8, 2021.

With regard to Mr. Wubker, on October 13 defendants informed plaintiffs

that they would need to secure his attendance at deposition with a subpoena, but

also proposed a compromise whereby Mr. Wubker would waive the subpoena

requirement:

> Mr. Wubker is available for his deposition on Tuesday, October
> 26 between 10am-1pm ET.  Because Mr. Wubker is no longer
> an officer or director of any defendant, his attendance at a
> deposition cannot be compelled via notice pursuant to Rule 30.
> Instead, he must be subpoenaed pursuant to Rule 45.  That said,
> Mr. Wubker is willing to waive the subpoena requirement and

6

> appear voluntarily if plaintiffs agree to the date and times
> identified above.  Please note that if this compromise isn't
> acceptable to plaintiffs, then Mr. Wubker will require a
> subpoena.

(TDS Letter, Exhibit D at 2) (emphasis added).  On October 18, plaintiffs

"confirm[ed] October 26 from 10am-1pm ET.  (*Id.* at 1).  Plaintiff does not assert

that Mr. Wubker is a current employee of any of defendants.

Plaintiffs argue that the Federal Rules permit them to take up to 7 hours of

deposition testimony from any witness, including a third party.  Absent any other

facts, plaintiffs are correct.  Here, there are other facts.  Specifically, Mr. Wubker

offered to "waive the subpoena requirement" if plaintiffs agreed to a 3 hour

deposition.  Plaintiffs did not issue a subpoena, and instead confirmed the date and

3 hour time frame and proceeded with the deposition.  Plaintiffs make no argument

that warrants disturbing this agreement.  Plaintiffs' motion as to this witness will

be denied.

With regard to Mr. Kos, plaintiffs assert he is a director of "Transaction Data

Systems."  Defendants state that Transaction Data Systems is no longer a party and

that they informed plaintiffs Mr. Kos was "no longer a director of TDS Operating"

on October 15, 2021.  (TDS Letter, Exhibit D at 2).  After this communication, it

appears that plaintiffs made no effort to serve Mr. Kos with a subpoena.  There is

no evidence that either party identified Mr. Kos as a person with information that

may be used to support claims or defenses in this litigation.  Plaintiffs assert that

7

Mr. Kos may have relevant information about negotiating an Asset Purchase Agreement with one of the individual plaintiffs, Mr. Grosso.  Defendants committed during the hearing that they will not call Mr. Kos as a witness at trial.

A litigant generally must make a witness available for deposition when the witness is under the litigant's control.  Plaintiffs provided a printout of Mr. Kos's web bio that states he is a director of Transaction Data Systems, a dismissed party, but simply asserts—with no analysis or other supporting facts—that defendant TDS Operating has the ability to produce him for a deposition.  But plaintiffs make no showing that Mr. Kos is a director of TDS Operating.  Nor do plaintiffs make any effort to show that TDS Operating has control of Mr. Kos.  *Cf. Gerling Int'l Ins. Co. v. Comm'r Gerling Int'l Ins. Co.*, 839 F.2d 131, 140 (3d Cir. 1988) (evaluating when an entity has control over another entity's documents).

Plaintiffs seem unlikely to suffer any prejudice or loss of information from not deposing Mr. Kos.  His asserted relevance is that he negotiated an Asset Purchase Agreement with Mr. Grosso.  Plaintiffs thus already know what Mr. Kos communicated during the negotiations.  Mr. Kos's unexpressed thoughts about the Asset Purchase Agreement generally are not relevant to contractual interpretation.  Further, defendants committed to not call Mr. Kos as a witness at trial.

Finally, plaintiffs were not diligent in securing Mr. Kos's testimony. Leaving aside plaintiffs' failure to notice his deposition until October 8, 2021, after

several hundred days of open discovery, plaintiffs did not ask defense counsel to

accept service of a subpoena, or engage a process server to serve a subpoena on

Mr. Kos directly when defendants reiterated Mr. Kos's third party status on

October 15.  Either of these actions would have secured Mr. Kos' attendance at a

deposition, at much less expense and risk than filing this motion.  Plaintiffs'

motion as to this witness will be denied.

　　　With regard to Ms. Sonksen, the parties agree she is a former employee of

dismissed party Transaction Data Systems.  Plaintiffs have not asserted that

defendants have control over Ms. Sonksen such that they can require her to sit for a

deposition.  On October 15, 2021, defendants advised plaintiffs that Ms. Sonksen

would:

> not agree to appear voluntarily for a deposition. Ms. Sonksen is
> working full time for City of Winter Springs, FL as a finance
> director; as a municipal employee, she has limited time off and
> has already committed it to other events this year.

(TDS Letter, Exhibit D at 2.)  This communication included an address for Ms.

Sonksen.

　　　As with Mr. Kos, plaintiffs were not diligent in securing Ms. Sonksen's

testimony.  When plaintiffs learned of Ms. Sonksen's unwillingness to appear for

deposition without a subpoena on October 15, plaintiffs did not ask defense

counsel to accept service of a subpoena or engage a process server to serve a

subpoena on Ms. Sonksen directly.  Plaintiffs seek to excuse their inaction on

grounds that they did not want to serve a subpoena on Ms. Sonksen until defendants confirmed their counsel did not represent her, but I am not aware of any rule of professional responsibility or of any procedural rule which would bar service of a subpoena after receipt of a message like that above. Nor would it be credible for defendants to assert an ethical issue from pursuing Ms. Sonksen's deposition via a subpoena after telling plaintiffs to do so.

Plaintiffs' motion as to Ms. Sonksen will be denied, albeit with a caveat. As of August 9, 2021, TDS Operating identified Ms. Sonksen as a person likely to have discoverable information that TDS Operating may use to support its claims or defenses under Federal Rule of Civil Procedure 26(a)(1). The address TDS Operating provided for Ms. Sonksen was "c/o counsel," and was later disclosed to be in Florida, outside the subpoena power of this Court. It is unclear how TDS Operating will be able to support its claims or defense with Ms. Sonksen's testimony unless TDS Operating has some measure of control over Ms. Sonksen. I will thus condition denial of this portion of plaintiffs' motion as follows: If defendants place Ms. Sonksen on their trial witness list, then defendants must make Ms. Sonksen available for a video deposition not to exceed 3 hours on a mutually agreeable date not more than 2 weeks after placing Ms. Sonksen on the witness list.

An implementing order is attached.

Dated:  November 16, 2021                                    _____
                                                                                      Special Master